May I proceed, Your Honor? Yes. Good morning, and may it please the Court. My name is Andre Lagomarsino, and I represent the appellants Rosa Lemus and her daughter GRL. This appeal comes here on a Rule 12b6 dismissal. The question is whether the second amended complaint plausibly alleges that CCSD, through an affirmative placement decision and pursuant to its longstanding policy and practice, placed GRL in a more dangerous position than she otherwise would have faced, and whether the District Court erred by applying only part of the allegations and part of the complaint and drawing inferences against the family in its analysis. I'd like to make two points. First, the dismissal order below focused on only part of the pleaded allegations and omitted two to three references to prior violence by N.A. Additionally, the Court also ignored same-day warning signs that matter to the foreseeability and deliberate indifference analysis. Second, once the actual allegations are credited, the second amended complaint plausibly pleads both moving force causation and foreseeability under Monell. So Counsel, what are the allegations of violence or physical incidents here? There was a, I see that there was an incident of N.A. throwing a bottle of lotion at another student, you know, three years before the start of this case. Is there anything else that you alleged that would be physical or violent towards another student? Yes, Your Honor. First, I'd like to start with the violence but then get to the threats of violence, but there was a prior reference to a battery, a previous battery with injury in the allegations. But do we know if that was anything different than the lotion bottle or something else? All we have is that entry and that goes to the inference, Your Honor, that that should be construed in favor of the plaintiff's appellants here. All we had, that reference was made. I mean, is that, I guess you're arguing that because there's a school report of a battery that we could infer that that might have been a separate incident than the lotion? Yes, Your Honor. Why is that a reasonable inference if we just don't know? Well, it was an, it occurred, definitely occurred before the incident that brought us here and it was that, that there was a previous battery incident. That's all we have. We have, it's, I think it's well known that many times records can be incomplete and we should be afforded the opportunity. There was some discovery here, right? Yes, Your Honor. Discovery in this case? Very, very early. We were provided with initial disclosures and then, but no, no depositions, nothing like that. So, I'm looking at something that is not in the appellate record, but it was in the, I believe the, the district court record because there were some expulsion documents, right? Yes, Your Honor. And so what I'm looking at is something down at the bottom, which I don't know exactly what this means, CCSD 032. And it's part of the expulsion record. It's dated 2-16-2022. And it says at the bottom, a review of the offending student's disciplinary chronology over the course of the past calendar year include the following infractions, truancy, bullying, battery, student with injury. That looks to me to be perhaps the source of what's in your complaint, but I think it's also possible from reading this that that's a typo in the report. I'm not sure about the previous year. Was, was that ever presented to the district court or relied on the CCSD 032 with that language in it as with any explanation to the district court about what in that 2-16-2022 report talking about over the course of the past calendar year meant? I do not believe it was, Your Honor. All right. Thank you. However, to answer the actual question, the previous lotion incident was in 2019. Right. So that, again, previous battery could mean if it was written February 16th that the previous battery in the expulsion report was the incident that brought us here. Or it could mean that it wasn't. We should be afforded an opportunity to do that discovery in that regard. Was there ever anything offered, and this is sort of just a yes or no question as opposed to bringing it out in the oral argument, your complaint talks about N.A. was documented and then hospitalized for a, quote, mental long-term condition. Was there ever any evidence offered or proffered to the district court as to what that referred to? No. Just the nature of the long-term condition. But there's, that could be like almost anything in the case. It could be something with no major behavioral ramifications. It could be something with symptoms of very violent tendencies. But the phrase mental long-term condition, especially considering the IDEA, I mean, that provides the district court with nothing, right? Well, I disagree respectfully, Your Honor. Under Mergia, the 2023 case that Judge Bea wrote, erratic behavior can be an indicator that should not be ignored. And in that case, there was erratic behavior that the offender in that case, who I believe killed her children, made statements to her other children that N. days are here and had certain kind of statements that at 12B6 were not sufficiently resolved against the plaintiff. So it could be, but again, if we're going to be drawing inferences, it shouldn't be drawing inferences. But you're required under our case law, and I'm just citing from Sinclair, but Sinclair is citing other cases like Hernandez versus San Jose and Kennedy versus Richfield, that the injury suffered has to be foreseeable. And so the complaint under Twombly and Iqbal needs to provide things from which the district court can legitimately conclude that injury based on this placement was foreseeable, right? I think, yes, that injury is foreseeable, but not the exact nature of the injury under Kennedy and Mergia. Both of those cases hold that you don't have to predict that there were going to be 33 punches and a blow-for-blow recitation as long as there's the potential for injury. And I think even here, going farther, a child threatens another child multiple times, two to three times in the record. Three years prior. Well, again, that's an inference I think is misleading because COVID shut down the schools here in Nevada in March of 2020, and it was all remote instruction in the 2021 school year. The 21-22 school year involved the offender being not in school because they were being essentially events for the most part three years before should have put the school on notice that readmitting this child to school and placing her in a mainstream classroom created a foreseeable risk of injury. The Constitution, as your Honor is aware, doesn't draw lines at one year, two years, three years. It's really a fact-based analysis here, and I think when you look at all of the facts that the school and the school district had in front of them, it was a foreseeable danger of what happened because in this case, the student threatened before he attacked. In the prior cases, the student threatened before he attacked. In this case, the student was told by the teacher, stop. In the other cases, there was insubordination, not listening to the teacher. So I believe it was foreseeable and it was a moving force. Yes, your Honor. In the second evented complaint, which is, of course, in the record starting ER3, on paragraphs 80 through 96, there are allegations about other lawsuits. I think all of them CCSD was a defendant. In any of those lawsuits, was there, did the court make a Manel, did a court find that CCSD was liable under Manel, or did it face, like we do here, a pleading situation where a court said, yes, the plaintiff in one of those cases adequately pleaded Manel liability, in a factual situation that's similar to this one? Candidly, your Honor, we did not go that deep with those prior lawsuits. The purpose of citing public records and the prior lawsuits were to show examples of prior injuries to demonstrate plausibility here. Of course, if we were to get into discovery and to be able to look at the facts in those prior cases and to be able to show a longstanding practice, then we would be able to do that. But at least, at a minimum, we showed, I think, close to 50 examples of incidents where there were prior offenders who attacked students after being readmitted to school. But candidly, your Honor, I don't, we did not go that deep in the analysis. Following up on Judge Bennett's foreseeability question, are there degrees of foreseeability? I mean, you talked about, the test cannot be that it's foreseeable that N.A. would strike your client 33 times. That's not what we're talking about. But it's certainly foreseeable that students would fight. This is high school. Teenagers are going to fight. It's foreseeable that there would be fights. It's foreseeable that somebody would be injured. What is, where is the line for the purposes of this case, for the purposes of Monell liability in the analysis? I think for the purposes of this case, your Honor, we just look to the prior Ninth Circuit precedent. And we look to Kennedy. We look to Murguia. And we see that there were, in Murguia, there was a prior convictions for child abuse of other children. And yet, the evidence is enough that, with respect to the children that were killed, that was foreseeable. So for that, we look to prior incidents. I think that's the really easy answer. I don't, I haven't found a case where threats alone are going to be the standard. But what must be foreseeable? The foreseeable risk of just injury. I think that's the answer. That injury is sufficient for their, for you to meet the foreseeability element of the test. Yes, your Honor. So any student, I'm sorry to interrupt. Please go ahead. So any student who has threatened any other student shouldn't be mainstreamed because that there is a foreseeability that a threatener is going to be an assaulter. No, your Honor, and that's not what we're arguing here. No, I understand that. But I mean, that's what I took from your answer to Judge Holcomb's question. That any type of violent activity makes a risk of injury foreseeable, and that gets you past the pleading stage on a claim like this one. That's not what we're asking for here. Here we're showing prior incidents of violence. We're showing prior threats. I think in the everyday world, if you had somebody in the workplace that was making threats, physical threats against other coworkers, most people would believe that that's a reasonable thing and that person should be fired. Kind of a different analogy, different facts, but the doctrine is the same. You have threats. You have violence. You have erratic behavior. You have mental health, long-term admissions. And this is, I think, you can't, I don't think it's fair to use long-term issues that occurred two or three years ago and then exclude the possibility that long-term mental health behaviors are somehow disconnected from that. Again, we have to get into this in discovery. There's a time on summary judgment when the court can decide that, Your Honor. Did you want to reserve the rest of your time? I do, Your Honor. All right. We'll give you two minutes. Thank you. May it please the Court, my name is Aki Levin, and I represent the Clark County School District in this case. The Second Amendment complained that the district court dismissed, alleged an unforeseen act of aggression by one student on another, not a constitutional violation by the school district. This is not a closed case. And plaintiffs had two chances to plead their claim. Even after requesting and receiving significant discovery before filing the Second Amendment complaint, the allegations were still insufficient to support each of the four elements of the Monell claim that they had to state. Counsel, what was the nature of that discovery that was turned over? Before they received approximately 400, actually I think this is exact, 498 pages of discovery, including the entire student file, the student discipline report, her attendance record. So they had significant information about this specific student. Okay. And this is why the Court should affirm the district court's order dismissing the complaint with prejudice without leave to amend. The Monell claim fails on the first element alone. This is because this is student-on-student conduct. They bring their claim under the state-created danger doctrine. The first element requires an affirmative act, putting the plaintiff in actual particularized danger. They have not alleged an affirmative act. Inaction is not enough. Well, they put, they left the student in school in class. I mean, the school district can't be arguing that no matter how much of a violent history a student has, that it's just a passive act to allow them to attend school, and so the state can't be, the school district can't be liable. I mean, that can't be your argument, right? Well, there has to be an affirmative act putting the plaintiff in an actual particularized danger. Yeah, but couldn't that come from the school being on notice of a particular type of extraordinarily severe violent history? No, that is not enough. So it wouldn't be enough, for example, if this student had assaulted many prior students and said, if I come back to school tomorrow, I'm going to beat up everybody in geometry class? That would be a different situation. Those are different allegations. But as this court held in Polanco, not any risk of danger suffices. There has to be an actual present danger that is sufficiently severe to raise constitutional concerns. But they're not saying what that severe danger is on the date that this incident occurred. They repeatedly say that this student had a history of escalating conduct when, in fact, their own allegations show the opposite. The only incident that they've alleged, if it was a physical incident at all, is the lotion bottle incident in May 2019. Thereafter, there was a verbal threat in November 2019. And from there, all we have are three incidents where this student was rude and defiant to her teachers, not anything related to another student. So by their own allegations, the conduct de-escalated. On the issue of the passage of the three years, I'm not sure which way that cuts. I mean, we're talking about high school students. We're talking about high school students who mature, get bigger, get stronger. To the extent that N.A. was a threat, wasn't she more of a threat three years later? I'm putting this in the foreseeability bucket, and that's the way I'm thinking of it in terms of the three years. Isn't that problematic for the school district, the passage of the three years and the maturity of N.A.? No, I don't believe so because, again, the severity of the injury must have been foreseeable. And in all of this court's state-created danger doctrine cases, there was always none of them involved isolated minor incidents that happened years ago. All involved serious prior incidents and an imminent precedent danger making the injuries foreseeable in this specific case. So my friend on the other side cited the Murguia case versus Langdon. But in that case, the mother of her 10-month-old babies had three criminal convictions for child abuse, and she alleged that the cop knew that. But more than that, the cop saw that this woman was in an active mental health crisis at the time. None of these allegations are present here. So it would have been different. Wasn't there an allegation that after N.A. threatened the student, the student went to the teacher and said, do something about it, and nothing happened? And so why isn't that somewhat similar to Murguia? Because now we're looking at what the teacher did and did not do, if I understand your question correctly. And if we're looking at the teacher, the teacher did not create this incident. She did not put this student in more danger than she found the student in before. I'm looking at paragraph, I think this goes to Judge Sanchez's question, but I'm looking at paragraph 33. And it says basically on February 1, G.R.L. relayed to teacher that student N.A. had made threatening statements to her, and G.R.L. indicated her concern for her physical safety resulting from such statements, relayed those to the teacher. Teacher took no steps to protect G.R.L. as a result of this information. That seems pretty specific. Correct, Your Honor, but to hold, there is no respondeat superior liability. So to hold the school district liable for what the teacher did and did not do, they would have to allege more than the teacher's failure to act. And they would have to show and allege that her failure to do something was pursuant to a widespread practice, for example, of teachers not doing anything. But that's not the following. Which, I mean, the complaint has pages and pages of allegations of just that, of either from public reports for a bill or from these other lawsuits that numerous times parents and students have gone to the school district or to administrators to complain about bullying or violent incidents or other things, and those have fallen on deaf ears. So why doesn't that establish more of a pattern for purposes of a Monell claim? Well, the pattern, the custom that they're alleging is a custom of knowingly putting violent children with a mental health condition back into classes. And the mere fact that prior incidents have happened, that parents have complained about bullying, and by the way, most of these incidents were 10 years prior, and it's not the same thing as saying that this is pursuant to a policy whereby CCSD ignores these violent incidents, allows these students to freely return to school. They're not saying that the CCSD didn't discipline these students. They do not allege that most, many, or even more than a few of these incidents were committed by repeat offenders known to Clark County School District to be violent, and or the result of CCSD knowingly and routinely putting such students back in classroom. There has to be a causation between the incidents occurring and the school not doing anything about it, and they have not alleged that. And simply by trolling the dockets for other cases in which similar allegations were made, that is insufficient. And I believe one of the justices asked what happened with some cases. I looked one of those cases up, the one that is mentioned in paragraph 91. In that case, the 1983 claim was dismissed. So, you know, the mere allegations in another lawsuit or parents' complaints about bullying years, years prior, or comments in legislative sessions in and of itself is insufficient to allege that this is all the result, and because of those deliberate policies, putting these kids back into class. And again, so we're touching on the foreseeability of the injury. Again, this court's jurisprudence shows that in each of those cases, there was an imminent and present danger present. And so the mere fact that this student, for example, was in a mental hospital nine months before the incident occurred, in and of itself doesn't show that this is a foreseeable incident. As Justice Bennett pointed out, it could have been for depression. It could have been for any disorder. And then you also have to meet the deliberate indifference standard. And so you would have to show that the school knew that, and this is a stringent standard, as the court held in Hernandez and the Herrera case. CCSD must have known that something was going to happen that day, yet ignored the risk and intended to expose the plaintiff to it anyways. This is not an objective standard, and this is what plaintiffs appear to rely on, where they say, well, the school should have anticipated that something could happen because look at her history, but that's not the standard. It's the subjective standard on the state-created danger. And there are no allegations that the school district subjectively knew that something was going to happen. Merely failing to realize something may happen is not enough, but that's all they have. And again, they repeat the same conclusory buzzwords, escalating conduct, when in fact the allegations show the other way around. And so if you don't have a constitutional violation, if you cannot plead a deprivation of a constitutional right, you don't get even to the other three Monell factors. And again, the custom and practice, which would be the next factor, it cannot be based on isolated incidents. It has to be so widespread that it is essentially well-established policy, and that's the Torino case. And so what they've alleged is, again, the same series of conclusory allegations that CCSD had such practice without saying what that is and how it applied. And those allegations are not presumed to be true. And so again, like as we went over before, all the prior incidents, they do not establish such custom. I believe they only allege one other incident involving violence. And by the way, none of the incidents that they mention pertain to this school, none of them. But only one incident that they alleged happened at a different school, and that's in paragraph 90, on excerpts of records 022 to 23, where CCSD allegedly knew about violent tendency of the child, which is plainly not enough under Torino. In other words, we have arguably, if this specific incident that's a subject of the appeal is one incident, and then we have this one other one in paragraph 90, that is not a persistent, widespread practice. You don't know any more about the Jackson case that's discussed, referenced in paragraph 90, correct? No, I don't. But counsel says that, well, we need discovery. That is not the rule. Under the well-established precedents, the doors do not open to discovery if you have only conclusory allegations. So the discovery happens before you file the complaint, or the fact-finding happens before. But in this case, even more so, the plaintiffs, the family did receive significant discovery before pleading their second amended complaint. So if they cannot plead their allegations and sufficient facts for each of the elements that they need to meet, that they should not be allowed another chance to correct it. Because, again, this is not a closed case. And I see my time is up, and I thank you for being here. All right, thank you. Thank you. Thank you, Your Honor. I'll go quickly. I think there's a lot to unpack. The Affirmative Act was the policy. That's the district's Affirmative Act. It's a Monell case. The actualized, actual particularized danger can be a group of people. This isn't the general public. This is the people in NA's classroom and at the school. It wasn't nine months before the attack that she was institutionalized. It was just a few months. NA was not in school between October and February. The present danger was being announced. The threats were being announced on the day it occurred. There's a reference to saying all we have is the policy itself. There is a policy. The district's not required to exclude a violent person from the classroom. They leave that up to various factors, but it's not an automatic exclusion, so that's permitted. I think that's a misstatement of the law to say that the severity of the injury has to be foreseeable. That's not consistent with Kennedy and Murguia. And finally, foreseeability was never briefed by the defendant in this case or the respondent. What happened was there was no hearing on the motion to dismiss. It was issued with an order. And so when we received the order saying foreseeability was one of the issues and it was connected to the moving force analysis, that was a big surprise to us. Even so, we've now provided the court with sufficient cases to demonstrate that foreseeability existed because of the prior violence, threats, and all the facts, including insubordination in the mental health treatment. But at the lower level, it just wasn't fair for us not to be able to even argue it in an oral argument or even to brief it. Thank you, Your Honor. All right, we thank counsel for their arguments. The case just argued is submitted. And with that, we are adjourned for the day. All rise. This court for this session stands adjourned.
judges: BENNETT, SANCHEZ, Holcomb